UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JAMURL ALIE SCOTT,
Petitioner,
v.
STUART SHERMAN, Warden,[1]
Respondent.

Case No. CV 16-1561-PA (KK)

FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This Final Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, pursuant to Title 28 of the United States Code, section 636 and General Order 05-07 of the United States District Court for the Central District of California.

///

///

1 People of the State of California, Corcoran State Prison, and California Department of Corrections are hereby dismissed from this action for lack of personal jurisdiction. Rumsfeld v. Padilla, 542 U.S. 426, 434, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004) ("[T]he proper respondent to a habeas petition is the person who has custody over the petitioner." (internal quotation marks and brackets omitted)); Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894 (9th Cir. 1996) (as amended May 8, 1996) ("Failure to name the correct respondent destroys personal jurisdiction."). Respondent Stuart Sherman, Warden of California Substance Abuse Treatment Facility and State Prison in Corcoran, California, is the sole remaining proper Respondent.

# I.

# SUMMARY OF RECOMMENDATION

Petitioner Jamurl Alie Scott ("Petitioner") has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to Title 28 of the United States Code, section 2254, challenging his 2013 state conviction for first-degree murder, and firearm and gang enhancements. Petitioner asserts the trial court improperly denied his Pitchess motion and improperly instructed the jury. Because Petitioner's claims fail on their merits, the Court recommends denying the Petition in its entirety.

# II.

# PROCEDURAL HISTORY

## A. STATE COURT PROCEEDINGS

On January 17, 2013, following a jury trial in the Los Angeles County Superior Court, Petitioner was convicted of first-degree murder in violation of California Penal Code section 187(a). Lodged Document ("Lodg.") 1,[2] 1 CT 288. The jury found true the following allegations: (1) Petitioner personally and intentionally discharged a firearm, causing great bodily injury and death; (2) Petitioner personally used a firearm; and (3) the offense was committed for the benefit of, at the direction of, and in association with a criminal street gang with the

---

[2] The Court's citations to Lodged Documents refer to documents lodged in support of Respondent Warden Stewart Sherman's ("Respondent's") June 21, 2016 Answer. See ECF Docket No. ("Dkt.") 13, Notice of Lodging. Respondent numbers the documents as follows:

1. Clerk's Transcripts in Los Angeles County Superior Court case number TA123666, four volumes ("1 CT – 4 CT")
2. Reporter's Transcripts in Los Angeles County Superior Court case number TA123666, ten volumes and one supplemental volume ("1 RT – 10 RT")
3. Appellant's Opening Brief in California Court of Appeal
4. Respondent's Brief in California Court of Appeal
5. Appellant's Reply Brief in California Court of Appeal
6. Opinion in California Court of Appeal
7. Petition for Review in California Supreme Court
8. Denial of Petition for Review in California Supreme Court

specific intent to promote, further, and assist in criminal conduct by gang members within the meaning of California Penal Code sections 12022.53(d), 12022.53(b), and 186.22(b)(1)(C). Id.; Lodg. 6 at 2, 8. The trial court also found Petitioner had two prior "strike" convictions within the meaning of California Penal Code section 667(a)(1). Lodg. 6 at 8. On February 13, 2013, the trial court sentenced Petitioner to eighty years to life in state prison. Id.

On December 24, 2013, Petitioner appealed his conviction. Lodgs. 3-5. On October 3, 2014, the California Court of Appeal affirmed Petitioner's conviction in a reasoned decision. Lodg. 6.

On October 28, 2014, Petitioner filed a petition for review in the California Supreme Court. Lodg. 7. On December 10, 2014, the California Supreme Court summarily denied the petition for review. Lodg. 8.

**B. FEDERAL HABEAS PETITION**

On March 7, 2016, Petitioner filed the Petition in this Court challenging his 2013 conviction. See Dkt. 1. On June 21, 2016, Respondent filed an Answer. Dkt. 12, Answer. On August 24, 2016, Petitioner filed a Traverse. Dkt. 16, Traverse. This matter thus stands submitted and ready for decision.

**III.**

**SUMMARY OF FACTS**

For a summary of the facts, this Court relies on the California Court of Appeal's opinion:[3]

> On January 3, 2011, Smith and his girlfriend, Maya Stewart, drove to a shopping center at 1653 E. 103rd Street in Los Angeles to

[3] Because this factual summary is drawn from the California Court of Appeal's opinion, "it is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence." Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2008) (citations omitted). To the extent Petitioner alleges the summary is inaccurate, the Court has independently reviewed the trial record and finds the summary accurate. The California Court of Appeal refers to Petitioner as "defendant." Lodg. 6.

eat at a Chinese Express restaurant. Stewart knew Smith had been a member of the Bounty Hunters, a Blood gang, but she believed he was no longer active. As Stewart and Smith walked into the restaurant, Smith said, "What's up?" to defendant, who was inside. Smith typically said, "What's up?" when he encountered people he did not know "to make sure everything was cool." Defendant answered, "What's up, Loc?" Stewart understood "Loc" to refer to a Crip gang member. Smith appeared surprised by the response and again said, "What's up?" with "a little bit more edge to it." Defendant again responded, "What's up, Loc?" Smith responded, "What's up, Dawg?" Stewart understood "Dawg" to mean a member of a Blood gang.

Defendant had a little girl with him who appeared to be three or four years old. After the exchange with Smith, defendant left the restaurant with the little girl and walked towards the parking lot. A minute or two later, defendant returned without the child and said to Smith, "Let me holler at you." Stewart turned around and saw defendant and Smith fistfighting. Stewart did not know who threw the first punch. At some point, Smith pinned defendant by his neck against the glass of a Popeye's restaurant. Smith said to defendant, "Why did you Loc me? I said, 'What's up?' to you. Why did you Loc me in front of your daughter?" Smith then added, "This is Bounty Hunters." Defendant responded, "I'm not with that," and Smith said, "You're not with that? Then let me go." Each man let go of the other, and defendant walked toward a rusted blue car and drove away. As he did so, Stewart saw defendant was bleeding from his face.

After defendant left, Stewart urged Smith to leave, but he refused. Stewart and Smith walked back into the restaurant and

> ordered some food. Stewart noticed that Smith had blood on his hands, and she suggested he wash it off. Stewart went into Popeye's, returned to the food courtyard with wet paper towels, and began to wash Smith's hands. At some point, Stewart looked up and saw defendant coming back. He was wearing the same clothes he had worn before, but he was now also wearing a knit hat with a brim. Stewart told Smith defendant had returned, and Smith looked up and saw him. Smith pushed Stewart away, said to defendant, "You ready to do this again?" and put his fists up. Defendant pulled up his shirt and pulled out a semiautomatic pistol. He then cocked the gun and started shooting at Smith. Smith ran towards the Popeye's restaurant but was not able to open the doors. Defendant continued to walk towards Smith, shooting him in the back of the head. After firing many shots, defendant ran away.

Lodg. 6 at 2-4.

**IV.**

**PETITIONER'S CLAIMS FOR RELIEF**

Petitioner presents the following claims in the Petition:

1. Claim One: The trial court improperly denied Petitioner's Pitchess motion;
2. Claim Two: The trial court improperly failed to instruct the jury on second-degree murder; and
3. Claim Three: The trial court improperly failed to instruct the jury on voluntary manslaughter based on the heat of passion.

See Dkt. 1 at 11-13; Dkt. 16.

///

///

///

///

V.

**STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of th[e] [United States Supreme] Court's decisions'" in existence at the time of the state court adjudication. White v. Woodall, ___ U.S. ___, 134 S. Ct. 1697, 1702, 1706, 188 L. Ed. 2d 698 (2014). However, "circuit court precedent may be 'persuasive' in demonstrating what law is 'clearly established' and whether a state court applied that law unreasonably." Maxwell v. Roe, 628 F.3d 486, 494 (9th Cir. 2010).

Overall, AEDPA presents "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, ___ U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013). The federal statute presents "a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (internal citation and quotation marks omitted). On habeas review, AEDPA places the burden on petitioners to show the state court's decision "was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). Put another way, a state court determination that a claim lacks merit "precludes federal habeas relief so long as fairminded jurists could disagree" on the correctness of that ruling. Id. at 101. Federal habeas corpus review therefore serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. at 102-03 (internal citation and quotation marks omitted).

Where the last state court disposition of a claim is a summary denial, this Court must review the last reasoned state court decision addressing the merits of the claim under AEDPA's deferential standard of review. Maxwell, 628 F.3d at 495. See also Berghuis v. Thompkins, 560 U.S. 370, 380, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010); Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

Here, the California Court of Appeal's October 3, 2014 opinion on Petitioner's direct appeal stands as the last reasoned decision with respect to Claims Two and Three presented in the Petition. See Lodg. 6. Accordingly, the Court will review Petitioner's Claims Two and Three under AEDPA's deferential standard of review for claims "adjudicated on the merits." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 99.

With respect to Claim One, the state courts supply no reasoned decision on the federal law issues,[4] thus this Court reviews Claim One de novo. Pirtle v.

---

[4] Claim One appears to rely on federal law not raised in Petitioner's state court actions. Specifically, Petitioner argues in his Traverse the denial of his Pitchess motion violated his due process rights. E.g., Dkt. 16 at 5-6. As discussed below, to the extent Claim One is unexhausted, the Court denies the claim on the merits because it is clear Claim One fails to raise even a colorable claim for federal habeas relief. See 28 U.S.C. § 2254(b)(2); Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005) (holding that "a federal court may deny an unexhausted petition on the merits . . . when it is perfectly clear that the applicant does not raise even a colorable federal claim").

Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002); see Berghuis v. Thompkins, 560 U.S. 370, 390, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review."). Nevertheless, "[e]ven on de novo review we must focus on the trial court's reasoning to determine whether a constitutional violation occurred." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008).

# VI.

# DISCUSSION

## A. CLAIM ONE DOES NOT WARRANT HABEAS RELIEF

In Claim One, Petitioner argues the trial court erred in denying his motion seeking discovery of officers' personnel records pursuant to Pitchess v. Superior Court, 522 P.2d 305 (Cal. 1974) ("Pitchess motion"). Dkt. 1 at 11; see Cal. Penal Code §§ 832.7, 832.8; Cal. Evid. Code §§ 1043-45; see Pitchess, 522 P.2d 305.

### (1) ADDITIONAL BACKGROUND

Petitioner's Pitchess motion sought the personnel files of Officers V. Carreon and A. Burke, including any complaints of their misconduct. 1 CT 118-19. Petitioner claimed Officers Carreon and Burke fabricated Petitioner's statements in a police report, signed only by Officer Burke. 1 CT 123-25, 139-43.

As to Officer Carreon, the trial court declined to order disclosure of his personnel file because Petitioner made "no showing" for such disclosure. 2 RT A-2. As to Officer Burke, the trial court held an in camera hearing in which it reviewed Officer Burke's personnel file, found no complaints involving Officer Burke within five years, and, thus, denied disclosure. Id. at A-3, A-7.

### (2) STATE COURT OPINION

The California Court of Appeal rejected Petitioner's Claim One on state law grounds only, reasoning as follows:

> . . . Officer Burke, not Officer Carreon, prepared the police report that purports to summarize defendant's statements to the arresting officers. In the absence of any showing that Officer Carreon made or adopted the purportedly false statements contained in the police report, they cannot be attributed to him.
>
> With regard to Officer Burke, we have reviewed the transcript of the in camera hearing, and find no error in the trial court's finding that there were no discoverable materials in her personnel file.
>
> Defendant's Pitchess motion thus provides no basis for reversal.

Lodg. 6 at 11.

**(3) ANALYSIS**

First, to the extent Petitioner contends the trial court erred under state law in denying his Pitchess motion, such a claim is not cognizable on federal habeas review. See Swarthout v. Cooke, 562 U.S. 216, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011) (federal habeas corpus relief is not available for errors of state law); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (same); see also Peete v. Cates, No. EDCV 11-1838-MMM, 2013 WL 4013311, at *7 (C.D. Cal. July 31, 2013) (holding denial of a Pitchess motion "is a state law question – not a decision involving 'clearly established federal law' – which is unreviewable on habeas" and citing district court cases finding denial of a Pitchess motion does not raise a federal habeas issue).

In his Traverse,[5] Petitioner argues denial of his Pitchess motion is inconsistent with Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).[6] See Traverse at 7. However, assuming a Pitchess motion may implicate a

---

[5] A petitioner is not permitted to raise new claims in a Traverse. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). Nevertheless, the Court has addressed Petitioner's federal due process arguments in support of Claim One.

[6] "In Brady, the Supreme Court held that '[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the

defendant's due process rights to exculpatory evidence under Brady, see Harrison v. Lockyer, 316 F.3d 1063, 1065-66 (9th Cir. 2003), Petitioner is not entitled to habeas relief because he has not made any showing Officer Carreon's or Officer Burke's personnel file contained exculpatory material. Rather, Petitioner makes conclusory allegations he was "entitled to personnel records of both officers," and the trial court failed "to follow established procedure" and abused its discretion. See Dkt. 1 at 11-12; Dkt. 16 at 6. Because Petitioner has made no showing of materiality, he cannot establish a due process claim based upon being denied access to information in the officers' personnel files. See Harrison, 316 F.3d at 1066 (rejecting challenge to trial court's denial of Pitchess motion where petitioner failed to make threshold showing that information in files was material to his defense); United States v. Michaels, 796 F.2d 1112, 1116 (9th Cir. 1986) (stating that a defendant's "mere speculation about materials in the government's files does not require [a] . . . court under Brady to make the materials available for [a defendant's] inspection") (internal quotation marks, brackets, and citation omitted), cert. denied, 479 U.S. 1038 (1987); United States v. Agurs, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.").

Finally, in his Traverse, Petitioner argues the Pitchess procedure is "constitutionally illogical," and "constitutionally inconsistent with Brady and companion cases" because it imposes "a five year limitation on information about complain[t]s against a particular officer." Dkt. 16 at 6. However, the Ninth

---

good faith or bad faith of the prosecution.'" Runningeagle v. Ryan, 686 F.3d 758, 769 (9th Cir. 2012) (quoting Brady, 373 U.S. at 87). "The elements of a claim for a Brady violation are that '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" Gonzalez v. Wong, 667 F.3d 965, 981 (9th Cir. 2011), cert. denied, 133 S. Ct. 155 (2012) (quoting Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)).

Circuit upheld the constitutionality of the Pitchess procedure where a petitioner similarly claimed "California's five-year discovery cut-off of impeachment material violated [his] due process rights," stating:

> We are not instructed on how a defendant in a criminal case will know, or be able to make, a preliminary showing that a police personnel file contains evidence material to his defense. But we are clear that the California Supreme Court has faithfully followed the United States Supreme Court. In our case Harrison made no showing that Officer Foppiano's file contained complaints material to his defense. Therefore, Harrison was not denied due process when he was denied access to material more than five years old.

Harrison, 316 F.3d at 1065-66. Hence, in reviewing Claim One de novo, the Court concludes habeas relief is not warranted on Claim One.

## B. CLAIMS TWO AND THREE DO NOT WARRANT HABEAS RELIEF

In Claims Two and Three, Petitioner argues the trial court erred in failing to instruct the jury on second-degree murder and voluntary manslaughter based on the heat of passion.[7] Dkt. 1 at 12.

### (1) STATE COURT OPINION

The California Court of Appeal concluded "failure to instruct on second degree murder and voluntary manslaughter, even if erroneous, was not

---

[7] Under California law, second-degree murder and voluntary manslaughter are lesser crimes than first-degree murder. CALCRIM 520, 571. Second-degree murder is a killing where there is insufficient evidence to prove the defendant's deliberation and premeditation. Id. 520. Voluntary manslaughter based on the heat of passion is a killing where: (1) the defendant was provoked; (2) as a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; and (3) the provocation would have caused a person of average disposition to act rashly and without due deliberation. Id. 570.

prejudicial," and rejected Petitioner's Claims Two and Three based on state law only as follows:

> The undisputed evidence was that the fight between Smith and the shooter was not particularly violent—although the shooter suffered a bloody nose, he apparently was not seriously hurt. There was, moreover, *no* evidence about the shooter's affect or statements immediately before or after the shooting, from which the jury could conclude that the shooter's reason was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment. Given the strong evidence of premeditation and the comparatively weak evidence of lack of premeditation/provocation, a different result was not reasonably probable.
>
> . . .
>
> That is, on the particular and undisputed facts of this case, which include the shooter leaving the victim's location and then returning 10 to 15 minutes later with a semiautomatic weapon, we do not believe it likely that a jury would find that the defendant formed the specific intent to shoot and kill Smith in order to promote, further, or assist criminal conduct by members of his gang, but without having engaged in sufficient deliberation to constitute first degree murder.

Lodg. 6 at 22, 27-28 (citation and quotation marks omitted) (italics in original).

**(2) RELEVANT LAW**

Claims of error in state jury instructions are generally a matter of state law and do not usually invoke a constitutional question. Gilmore v. Taylor, 508 U.S. 333, 342-43, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993). "Claims that merely challenge the correctness of jury instructions under state law cannot reasonably be

construed to allege a deprivation of federal rights." Van Pilon v. Reed, 799 F.2d 1332, 1342 (9th Cir. 1986); see also Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005) ("Any error in the state court's determination of whether state law allowed for an instruction . . . cannot form the basis for federal habeas relief."); Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988) (an instructional error "does not alone raise a ground cognizable in a federal habeas corpus proceeding").

Rather, on federal habeas review, the only question is whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)). In answering this question, the instruction must be considered in the context of the trial record and the instructions as a whole. Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977); see also Middleton v. McNeil, 541 U.S. 433, 437-38, 124 S. Ct. 1830, 158 L. Ed. 2d 701 (2004).

Additionally, as a general matter, the United States Supreme Court has never required a trial court to instruct a jury on lesser-included offenses in a non-capital case on due process grounds.[8] See Beck v. Alabama, 447 U.S. 625, 638 n.14, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980) ("We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case."). Hence, the Ninth Circuit has held instructional error claims based on the failure of a state court to instruct on lesser-included offenses do not implicate "clearly established federal law" and do not merit habeas relief. United States v. Rivera-Alonzo, 584 F.3d 829, 834 n.3 (9th Cir. 2009); Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) (failure of state court to instruct on lesser-included

---

[8] For this Court to find a constitutional right to a lesser-included offense instruction in this non-capital case, it would require the application of a new rule of law. This Court may not undertake such an exercise in a habeas corpus proceeding. Teague v. Lane, 489 U.S. 288, 310, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989); Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) (per curiam) (habeas relief for failure to instruct on lesser included offense in non-capital case barred by Teague).

offense does not alone present a federal constitutional question cognizable in a federal habeas corpus proceeding).

However, the Ninth Circuit has recognized a cognizable federal constitutional claim may be stated where a state court has refused a requested lesser included offense instruction which is consistent with the defendant's theory of defense. Solis, 219 F.3d at 929 (stating "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule") (citing Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984)). At the same time, this exception does not apply if there is insufficient evidence supporting the proffered lesser included offense instruction. Id. at 929-30 (finding no constitutional error in refusal to give lesser-included voluntary manslaughter instruction where there was no "substantial evidence" supporting the instruction under state law).

"Under Brecht, an instructional error is prejudicial and habeas relief is appropriate only if, after reviewing the record as a whole, [the court] concludes that there was a substantial and injurious effect or influence on the verdict, or if [the court is] 'left in grave doubt' as to whether there was such an effect." Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010); see Brecht v. Abrahamson, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." O'Neal v. McAninch, 513 U.S. 432, 436, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995).

**(3) ANALYSIS**

First, to the extent Petitioner argues Claims One and Two as purely state law error, his claims are not cognizable on federal habeas review. Estelle, 502 U.S. at 67-68.

Second, assuming Petitioner's Claims Two and Three are cognizable on federal habeas review, there is no clearly established United States Supreme Court guidance as to whether a due process violation occurs where a trial court fails to give instructions on lesser-included offenses in a noncapital case, such as Petitioner's case. See Beck, 447 U.S. at 638 n.14 ("We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case."); see also Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998) ("Under the law of this circuit, the failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."). Hence, the state court's denial of Petitioner's Claims Two and Three was not "contrary to, or . . . an unreasonable application of, clearly established Federal law." See 28 U.S.C. § 2254(d)(1).

Third, even if Claims Two and Three are cognizable on federal habeas review, reviewing de novo[9] whether a due process violation occurred, Petitioner's Claims Two and Three fail. As discussed below and as the California Court of Appeal recognized, substantial evidence does not support instructions of second-degree murder or voluntary manslaughter based on the heat of passion. See Solis, 219 F.3d at 929-30.

**a. Substantial evidence does not support a second-degree murder instruction**

Second-degree murder is a killing where there is insufficient evidence to prove the defendant's deliberation and premeditation. CALCRIM 520. Here, substantial evidence does not support a finding of insufficient evidence to establish Petitioner's deliberation and premeditation. Rather, the evidence demonstrated Petitioner made a deliberate and premeditated decision to return to the courtyard

9 The Court reviews Plaintiff's claims de novo because the state court only analyzed Claims Two and Three as issues of state law. See Berghuis, 560 U.S. at 390.

armed with a semiautomatic pistol after the fistfight with victim Smith. CALCRIM 520; see People v. Torres, 29 Cal. Rptr. 706, 708-09 (Cal. Ct. App. 1963) (premeditation and deliberation found where defendant armed himself with a knife and confronted his victim minutes after their fistfight ended because defendant "had time and opportunity to further ponder his acts before fatally assaulting his unarmed victim"). Petitioner confronted victim Smith and escalated the confrontation by pulling out the pistol, cocking the gun back, and shooting at victim Smith. 4 RT at 760, 763, 766-68. When victim Smith then retreated and ran away in an attempt to escape, Petitioner followed him and fired multiple shots to the back of his head, inflicting fatal injury. Id. at 767-68; see People v. Halvorsen, 165 P.3d 512, 542 (Cal. 2007) (premeditation and deliberation found where defendant shot victim "in the head or neck from within a few feet" because this was a method of killing sufficiently "particular and exacting" to permit an inference that defendant was "acting according to a preconceived design" (internal quotation marks omitted)). Thus, under the facts of this case, substantial evidence does not support a second-degree murder instruction. See Solis, 219 F.3d at 929-30.

**b. Substantial evidence does not support a voluntary manslaughter instruction based on heat of passion**

Voluntary manslaughter based on the heat of passion is a killing where: (1) the defendant was provoked; (2) as a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; and (3) the provocation would have caused a person of average disposition to act rashly and without due deliberation. CALCRIM 570. Here, substantial evidence does not support a finding that Petitioner actions were based on the heat of passion. First, substantial evidence does not support a finding that, at the time victim Smith ran away from Petitioner and Petitioner shot victim Smith in the back of his head, Petitioner acted rashly and under the influence of intense emotion that obscured his reasoning or judgment. Rather, the evidence

demonstrated Petitioner acted with due deliberation when he returned with a semiautomatic pistol to confront victim Smith after their fistfight ended. Petitioner continued to act with due deliberation when he made a calculated decision to pull out the pistol, shoot at victim Smith, and continue to shoot victim Smith in the back of his head as he attempted to escape.

In addition, substantial evidence does not support a finding that a person of average disposition would act rashly and without due deliberation, even considering Petitioner's prior fistfight with victim Smith, victim Smith putting up his fists, and victim Smith asking Petitioner if he was "ready to do this again?" People v. Manriquez, 123 P.3d 614, 641-42 (Cal. 2005); 4 RT 760, 762. "[N]o defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man." People v. Gutierrez, 52 P.3d 572, 609 (Cal. 2002), as modified (Aug. 15, 2002), as modified (Oct. 2, 2002) (internal citation and quotation marks omitted); see People v. Johnston, 7 Cal. Rptr. 3d 161, 171 (Cal. Ct. App. 2003). Here, the provocation by victim Smith would not have caused a person of average disposition to act rashly and without due deliberation in the manner in which Petitioner did. Thus, substantial evidence did not support a voluntary manslaughter instruction based on the heat of passion. See Solis, 219 F.3d at 929-30.

**c. The alleged jury instructional errors had no substantial and injurious effect or influence on the jury's verdict**

Finally, the alleged errors did not have a substantial and injurious effect or influence on the verdict. Brecht, 507 U.S. at 637-38; Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir. 2009) ("'substantial and injurious effect' means a 'reasonable probability' that the jury would have arrived at a different verdict had the instruction been given"). As stated above, the overwhelming evidence contradicted the second-degree murder and voluntary manslaughter instructions,

and supported the first-degree murder instruction. Accordingly, the Court is not left in "grave doubt" that the outcome would have been different absent the alleged error. Pulido, 629 F.3d at 1012.

Accordingly, habeas relief is not warranted on Claims Two and Three.[10]

VII.

**RECOMMENDATION**

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) accepting this Final Report and Recommendation; (2) denying the Petition; and (3) dismissing this action with prejudice.

Dated: November 18, 2016

HONORABLE KENLY KIYA KATO
United States Magistrate Judge

[10] Respondent "presumes" Petitioner argues the trial court improperly failed "to inform jurors that a conviction for first degree murder required the prosecution to prove beyond a reasonable doubt the *absence* of provocation" in Claim Three. Dkt. 12 at 22 (italics in original). However, Petitioner fails to raise such an argument in his Petition or Traverse. See Dkts. 1, 16. Thus, the Court declines to address the argument.